Hillsborough, }
Dec., 1898. }

GREGG *v.* THURBER, *Assignee.*

A bill in equity may be maintained where it is a reasonably necessary process and convenient procedure for speedily and economically establishing the plaintiff's rights.

Where a banking corporation has sold a mortgage which purported to be a first lien on land described therein, but was in fact subject to prior mortgages, the purchaser is not entitled to a decree ordering the assignee in insolvency of the corporation to take his mortgage at its full value, or to pay off prior incumbrances, when it appears that the sale was made in good faith, that the parties to the transaction had equal knowledge and means of knowledge, that the purchaser failed to examine the public records showing the existence of earlier liens, and made no investigation as to the state of his title for nearly two years.

In such case the plaintiff is not entitled to a preference to the extent of the amount realized by the corporation from a foreclosure of a prior mortgage and a sale of a portion of the land thereunder, when the facts tend to show that the remainder of the land is of sufficient value to satisfy outstanding liens, and the plaintiff has made no attempt to exhaust his mortgage security.

PETITION, alleging that the Security Trust Company was a corporation lately doing business in Nashua, in this county, and in the state of North Dakota; that while engaged in business it would take notes secured by mortgages on real estate running to itself and negotiate the same to such parties as might desire to buy; that Anna Slack gave her promissory note to the company for $3,500, and executed and delivered to the company her mortgage covering 480 acres of land situated in the county of Grand Forks and state of North Dakota, and the company afterward sold the note and mortgage to the plaintiff for the sum of $3,500, representing to him that the same was a first mortgage upon the land described therein, as the mortgage stipulates; that at the time of the plaintiff's purchase there were two prior mortgages upon the same property, aggregating $2,000, which are still outstanding; that while the plaintiff held his mortgage undischarged on said land, the Trust Company sold 160 acres of the mortgaged premises for $1,750 to one Joy, who sold the same for $2,250 to one Naigle, who is now in possession of the same. The prayer of the bill is that the defendant, assignee of the Trust Company, may be ordered to pay to the plaintiff the full amount of his mortgage note, with interest, or that he may be ordered to pay the prior mortgages and incumbrances, and

adjust matters with Joy and Naigle, to the end that the plaintiff may have a first mortgage as was intended, and for such other relief as may be just. Facts found by the court.

The Security Trust Company was organized in 1889, and continued in business until July, 1893, when it suspended. It resumed business again January 29, 1894, and finally suspended and went into the hands of the assignee, October 9, 1896. The plaintiff was a director and president of the company until July, 1896.

The company did a general banking business, receiving deposits subject to check. It also did a savings bank business, having this department separate and apart from its other business, and loaned money upon western mortgages. The western office of the company was in charge of one Clifford of Grand Forks, North Dakota, who loaned the money sent to him from the Nashua office upon such security as he chose to take. The general manager of the eastern office was one Sargent. Clifford made the loans upon his own judgment, and the notes or bonds were sent East. The securities were generally accompanied by the abstracts of title, the applications, and other papers connected with the loans. Sometimes the papers came together; at other times the abstract was sent at a later date, and in some cases it was never forwarded. Sargent had nothing to do with making the loans. They were brought before the executive board and accepted; but before accepting them, every member had an opportunity to investigate them. In all cases of first mortgage loans, however, the money was paid to the western borrower by Clifford, and the papers were then forwarded to the Nashua office for sale. The executive board had confidence in Sargent, and also in Clifford, whose investigation of mortgage security was supposed to be sufficient. The plaintiff knew that all western loans were placed on Clifford's judgment, and the executive board acted when required. After mortgages were received from the western office, they were sold to investors by Sargent, as eastern manager and treasurer of the company, and the money received was from time to time reloaned upon like securities, which were in their turn forwarded and sold.

In May, 1893, the company became somewhat embarrassed. At that time the plaintiff held the notes and obligations of the company to a large amount. For the purpose of supplying cash to the company, he surrendered the notes and obligations, and in their place took a certificate of deposit for approximately $60,000, with $90,000 of what purported to be first mortgages upon western property as collateral.

October 8, 1894, the plaintiff purchased $60,000 of the collateral securities, and gave up his certificate of deposit and the excess of collateral. Sargent made the sale under a special vote

of the executive board. Among the securities so purchased were the Slack note and mortgage, which were enclosed in a paper wrapper bearing, among others, the following statement: "No. 4569 Guaranteed First Mortgage. Anna Slack and husband, Grand Forks Co., N. D. To Security Trust Company, Nashua, N. H., $3,500." Up to July 3, 1897, there was no formal assignment of the mortgage to the plaintiff. It was done on that day, and the assignment recorded on July 30 following.

The mortgage was not a first mortgage, but was in fact a third mortgage upon a portion of the land. The prior mortgages were for $800, $1,200, and $1,255, respectively. The $800 mortgage is an asset of the company's savings bank department, and came into the hands of the assignee as such. The $1,200 mortgage is owned by a resident of Pennsylvania, having been sold to him by a representative of the company. The mortgage of $1,255 was owned by the company from the time of its issue, December 21, 1891, until after the purchase of the Slack mortgage by the plaintiff. The company subsequently foreclosed this mortgage and sold 160 acres of the land for $1,750, unbeknown to and without the consent of the plaintiff.

At the time of the sale to the plaintiff he supposed he was purchasing a first mortgage, and Sargent also then supposed it to be such, the existence of the prior mortgages having escaped his memory. The sale was made on the face of the papers themselves, which the plaintiff then undid and looked over, and without any representations by Sargent or any one connected with the company that the mortgage was a first one. The plaintiff relied upon the statements on the papers and made no other investigation. It is also found that there was probably no knowledge or information in respect to the mortgage in the possession of Sargent which was not in the possession of the plaintiff.

When the plaintiff took the mortgage, the abstract of title was missing. Two days later the plaintiff requested one Russell to make out a list of all the missing papers and investigate in regard to them. No efficient investigation was made as to the mortgage in question until September, 1896.

The plaintiff was in Grand Forks in 1893 and 1895, but did not examine the records which would have shown the existence of the prior mortgages. He did not discover the state of the title until the fall of 1896.

On and previous to May 10, 1893, and October 8, 1894, the plaintiff and every one connected with the Security Trust Company believed it to be entirely solvent and able to pay all its obligations in full; and it is found that the plaintiff acted honestly and with no intention whatever to prefer himself, and did not prefer himself, when the mortgages were pledged to him in May, 1893, or when he bought them in October, 1894.

The body of the Slack note contains the following representation: "Secured by first mortgage in real estate appraised at $9,000."

Clifford probably knew that the plaintiff was the owner of the Slack mortgage when the $1,255 mortgage was foreclosed and the land sold for $1,750.

The court dismissed the petition, and the plaintiff excepted.

*Charles H. Burns* and *Taggart & Bingham*, for the plaintiff.

*Oliver E. Branch, Charles J. Hamblett*, and *Wason & Jackson*, for the defendant.

BLODGETT, C. J.    The defendant's contention, that equity has not jurisdiction of the plaintiff's petition because he " has a full, complete, and adequate remedy at law," requires but a passing consideration.    Not only is it the general rule that " the remedy at law, in order to exclude a concurrent remedy at equity, must be as complete, as practical, and as efficient to the ends of justice and its prompt administration, as the remedy in equity " (*Walla Walla* v. *Water Co.*, 172 U. S. 1, 12; *Tyler* v. *Savage*, 143 U. S. 79, 95), but, in addition, it is now the rule in this state that a bill in equity may be maintained where it is a reasonably necessary process and convenient procedure for speedily and economically establishing the plaintiff's rights.    *Tasker* v. *Lord*, 64 N. H. 279.    Irrespective, therefore, of the question whether the plaintiff has a legal remedy as practical and as efficient to the ends of justice and its prompt administration as the equitable remedy (although we think it is apparent he has not), it would seem to be entirely plain that his petition as to the distribution of property which is now in the custody and subject to the order of the court, and upon a portion of which he claims a lien by reason of the alleged fraudulent conduct of the Trust Company, comes within the New Hampshire rule.

But while equity has jurisdiction, no case is made entitling the plaintiff to relief.    The reported facts obviously afford no ground for a decree that the receiver pay him either the full amount of his mortgage, or the outstanding prior mortgages which are the property of third parties.    Sargent made no representations whatever as to the plaintiff's mortgage.    He had no knowledge or information in regard to it which the plaintiff did not have.    Both in good faith supposed it to be a first lien, as it purported to be.    In no way was the plaintiff misled or deceived by Sargent or any other representative of the company. The sale was made entirely on the face of the papers, which the plaintiff examined, and upon nothing else.

But this is not all.    The public records showing the existence of the prior mortgages were open to examination, and the plain-

tiff must be deemed to have had constructive notice of them. *Tripe* v. *Marcy*, 39 N. H. 439, 448; *Hunt* v. *Johnson*, 19 N. Y. 279; 2 Pom. Eq. Jur., *s.* 649.

Nor is this all, for while the abstract of title was missing from the papers at the time of the plaintiff's purchase, and to his knowledge, he nevertheless made no investigation as to the standing of the mortgage until September, 1896, and did not even procure a formal assignment of it or have the assignment recorded until July of the following year. This unexplained failure on his part for nearly two years to ascertain the state of his title, and for a still longer period to give notice of it upon the record for the protection of others who might have an interest in the property, proves not wrongdoing or fraud on the part of the company, but gross inattention and carelessness on his own part. He cannot at this late day invoke his own negligence to impeach the transaction, and then call that negligence the company's fraud. If he did not intend to assume the risk of the title, it was his plain duty seasonably to investigate and ascertain how it stood; and if upon its ascertainment he should deem himself to have been deceived and defrauded, an adequate legal remedy awaited him. His failure to do the one or resort to the other, or in any way to treat the sale as void and the company's possession of the proceeds as tortious until years had elapsed and the company had become insolvent, constitute such laches on his part as to disentitle him to the redress for which his petition asks, and renders the maxim *caveat emptor* justly applicable. In any equitable view, he can, at most, be preferred only to the extent of the $1,750 which the company received from the foreclosure of the $1,255 mortgage, and which went into their general assets.

But it cannot now be held that the plaintiff is entitled to any preference whatsoever, because there is no finding, nor does it in any way appear, that he has been damaged. On the other hand, there is evidence tending to show that he has not been damaged, because it not only appears that the land embraced in his mortgage was of the appraised value of $9,000 when the mortgage was given, but because one third of it has since been sold for $2,250. Both of these facts tend to show that the remainder of the land is of sufficient value to pay all the outstanding mortgages upon it, which amount to some $5,500; and if it is, the plaintiff is of course remediless in equity. Suppose, however, that it is not sufficient,— as between him and the general creditors of the company, who are the real defendants, equity manifestly requires that he should first exhaust his mortgage security.

*Exception overruled.*

All concurred.