### TILLAMOOK WATER CO. v. TILLAMOOK CITY et al.

(Circuit Court, D. Oregon. July 12, 1905.)

#### No. 2,973.

MUNICIPAL CORPORATIONS—CONTRACT WITH WATER COMPANY—CONSTRUCTION.

 A contract between a city and a water company, by which the latter is granted a franchise to lay mains and pipes in the streets and to furnish water to the inhabitants of the city for a term of years, which it binds itself to do, but which contains no provision that the grant shall be exclusive, or that the city will not construct waterworks of its own, does not by implication bind the city not to do so, and is not violated by the construction by the city of a competing plant.

In Equity. On demurrer to bill.

This is a suit brought by the complainant, the Tillamook Water Company, a corporation created and existing under the laws of the state of Oregon, to enjoin officers of Tillamook City from proceeding to institute a system of waterworks for said city. The bill shows that on November 16, 1896, Tillamook City entered into a contract with one H. Orchard, whereby it gave to him and his legal representatives or assigns the right to install a water plant and supply Tillamook City with water; that said contract and agreement was ratified by an ordinance of the city, made on said date; that by said contract, in consideration of the covenants and conditions therein expressed, the said Orchard was granted a "franchise, privilege, and easement to place and maintain in the streets and alleys of the city of Tillamook any and all water pipes, mains, and connections which may be necessary or convenient" to enable him to supply the said city and its citizens with water for municipal and other purposes, which said pipes, mains, and appliances were to be so kept and maintained for the period of 30 years from said date; and that said contract provided that he, as "the party of the second part, is to, and does, in consideration of the execution of this contract, covenant and agree to construct and maintain within said city of Tillamook, for said period of 30 years, a system of waterworks supplying pure mountain water." The bill shows that the agreement set forth a specification of the rates which should be charged to consumers, and a provision by which the city covenanted to pay the sum of $40 per month for its use of water for municipal purposes for the period of 3 years; that the city was given the option to continue to receive water at the same rate at the expiration of said period of 3 years; and that the contract provided that, if at any time after the expiration of four years from its date the city should desire to purchase the water rights, privileges, easements, reservoirs, pipe lines, etc., it should have the option to make such purchase upon conditions specified therein. The bill further alleges that said H. Orchard and his associates immediately began the construction of the pipe lines, and to acquire rights to water and water privileges, and expended, in carrying out the terms of said contract, more than $15,000; that thereafter he assigned and set over unto the complainant herein all his rights, title, and interest in and to said works and contract; that in pursuance of said contract Tillamook City paid thereafter to the complainant $40 per month for the use of the water for municipal purposes for the period of time provided for in said contract; that after the expiration of the four-year limit Tillamook City elected to continue the contract and to exercise the option mentioned therein, with the understand-

ing, however, that thereafter it should pay $30 per month, instead of $40; that from and after May, 1897, the water plant now owned by the complainant was fully installed, and the people of Tillamook City ever since that date have been supplied with water from its water system; and that the value of complainant's property at the present time is more than $14,000. Then follow allegations of the acts of the city and its officers, instituted for the purpose of constructing and maintaining a complete system of waterworks for the city, the water to be obtained from sources other than those from which the complainant obtains its supply, and that said action by the city will render the complainant's property valueless and of no profit, and will impair the obligations of the contract between complainant and said city. On the ground of such alleged impairment of the obligation of the contract, the jurisdiction of this court is invoked. The defendants demur to the bill for want of jurisdiction and for want of equity.

W. H. Holmes, for complainant.
T. B. Handley, for defendants.

GILBERT, Circuit Judge (after stating the facts). The question presented by the demurrer is whether the city of Tillamook, by proceeding to construct and maintain a system of waterworks for the purpose of furnishing water to the city and its inhabitants, will impair the obligation of its contract with the complainant. It is not disputed that the municipality is given by the law the authority to create, own, and maintain a system of waterworks. The whole question depends upon the nature of its contract with the complainant. There can be no doubt that the grant of an exclusive privilege to a water company to lay water pipes and furnish the inhabitants of a city with water for a stated period of time, accepted and acted upon by the company, is the grant of a franchise given in consideration of the performance of a public service, and is protected against hostile legislation by the state and by the municipality. New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; New Orleans Water Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; St. Tammany Waterworks v. New Orleans Waterworks, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563. Nor can there be any doubt that, if a municipality has covenanted that during the life of the privilege it will not institute works of its own, it would be an impairment of the obligation of its contract to institute, before the expiration of that period, a waterworks system, to be owned and operated by the municipality. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. But the city of Tillamook gave to the complainant's grantor no exclusive privilege or franchise, nor did it covenant, as in the Walla Walla Water Case, that it would not erect, maintain, or become interested in any other waterworks.

The principles which must control the decision of the present case are to be found in Charles River Bridge Co. v. Warren Bridge Co., 11 Pet. 420, 9 L. Ed. 773, 938; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165; Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; Skaneateles Water Co. v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585; Joplin v. Light Co., 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127, and Helena Waterworks v. Helena,

195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245. In the first of these cases the court declared the general doctrine, which has been followed in all the subsequent decisions, that public grants are to be construed strictly, and that in such grants nothing passes by implication. In the second case, the court said:

"The contract in terms contained no words of exclusion. It gave to the company the privilege of laying its mains in the streets of the town, and contained a covenant on the part of the town to pay certain hydrant rentals; but grants from the public are strictly construed in favor of the public, and grants of a privilege are not ordinarily to be taken as grants of an exclusive privilege."

In Bienville Water Supply Co. v. Mobile, the water company was authorized to construct canals, ditches, pipes, etc., and was charged with the duty of introducing into the city of Mobile such supply of pure mountain water as the domestic, sanitary, and municipal wants thereof might require. On April 14, 1891, the city entered into a contract with the water company, whereby the latter was to furnish for a period of 12 years a designated number of fire hydrants for the use of the city, and agreed not to charge a greater or higher rate for water for domestic use than that specified in the contract. Six years later, and while that contract was in full force, the city proceeded to acquire waterworks, to be owned and operated by itself. The water company contended that the city had no legal right to impair the value of its plant and to destroy or diminish its income; but the court held that, since the water company had been granted no exclusive franchise to furnish water to the city and its inhabitants, the city had the right to build or acquire a system of waterworks for that purpose, and that to do this was no violation of its contract.

In the Skaneateles Case, the court, in answering the argument that there is an implication that the grantor of a right to lay pipes and furnish water in a town will do nothing to detract from the full and complete operation of the grant, said:

"There is no implied contract in an ordinary grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far-reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with water, to be left to implication. We think none such arises from the facts detailed."

In Joplin v. Light Co., a right had been given to maintain an electric light plant for a period of 20 years. The ordinance conferred rights, exacted obligations, and fixed the rates to be charged. Eight years later the city instituted proceedings to erect an electric light plant, to be owned, controlled, and operated by itself. The court held that, by the terms of the ordinance and its acceptance by the light company, there was no implied contract that the city might not become a competitor with the company.

The case of Helena Waterworks v. Helena is directly in point. The contract in that case was substantially identical with that which is under consideration in the present case, with the exception that it contained a stipulation that the grant was not to be exclusive of the right of the city to contract with another company.

That stipulation, however, had no bearing upon the decision of the case, for the city of Helena gave no franchise to any other company, but was about to take steps to secure a water supply, to be owned and controlled by itself. The court referred to the fact that the ordinance contained no express stipulation that the city should not build a plant of its own, and, referring to the decisions above cited, said:

"These cases hold that the grant of a franchise does not of itself raise an implied contract that the grantor will not do any act to interfere with the rights granted to the waterworks company, and that in the absence of the grant of an exclusive privilege none will be implied against the public, but must arise, if at all, from some specific contract binding upon the municipality."

The decision in that case is a complete answer to the contention made, in this: that the complainant herein entered into a binding contract whereby it agreed to furnish water to the inhabitants of the city of Tillamook for the period of 30 years. The contract in that case contained a similar covenant upon the part of the Helena Water Company; but the court said that, although the contract bound the company to furnish water to the inhabitants of the city for a term of 20 years, there was nothing in the contract to bind the inhabitants of the city to take water from the company, and that the city had not and could not undertake to make any contract upon the subject of the private supply of individuals and the city, beyond securing a maximum rate of charge for water supply. The court found nothing in the contract to prevent the city from constructing its own plant.

The complainant earnestly contends that the decision of the Walla Walla Water Case, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, is authority for its contention that by implication it has a contract with the city, the obligation of which the latter is about to impair. In that case an ordinance was passed by the city council of Walla Walla, granting the water company for a term of 25 years the right to lay mains and pipes in all the streets of the city for the purpose of furnishing the inhabitants thereof with water, and by the terms thereof the city agreed to pay certain rentals, and bound itself not to make, maintain, or become interested in waterworks, unless the contract should be avoided by the judgment of a court of competent jurisdiction, on the ground of a substantial failure of performance by the company. After this contract had been in force, and the stipulated rentals paid for about 6 years, an ordinance was passed, providing for the construction of a system of waterworks for the purpose of supplying the city and its inhabitants with water. The Supreme Court held that under its contract with the water company, if the city should desire to establish waterworks of its own, it could do so by condemning the property of the company, but that it could not enter into direct competition with the company during the life of the contract, and that as long as the contract had not been avoided by a court of competent jurisdiction, but remained in force, the city had no right to establish waterworks, because it had expressly so covenanted with the water company.

In brief, the contract in the present case provides for no exclusive right in the complainant to supply water to the city and its inhabitants. It contains no covenant by the city that it will not erect waterworks of its own, or that it will abstain from granting such right to a competing company during the life of the contract; and the fact that the contract contains a covenant that the water company shall furnish water to the inhabitants of the city of Tillamook for a fixed period of time does not by implication restrain the city from erecting waterworks of its own, and to do so is not to. impair the obligation of its contract.

The demurrer is sustained.