TILLAMOOK WATER CO. v. TILLAMOOK CITY et al.

(Circuit Court of Appeals, Ninth Circuit. October 22, 1906.)

No. 1,315.

WATERS AND WATER COURSES—CONTRACT BETWEEN CITY AND WATER COMPANY—CONSTRUCTION.

A contract between a city and a water company, by which the latter is granted a franchise to lay mains and pipes in the streets and is to furnish water to the city and its inhabitants for a term of years, but which contains no provision that the grant shall be exclusive, or that the city will not construct waterworks of its own, does not by implication bind the city not to do so, and is not violated by the city by the construction of a competing plant.

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 139 Fed. 405.

W. H. Holmes, for appellant.

Claude Thayer, for appellees.

Before ROSS and MORROW, Circuit Judges, and De HAVEN, District Judge.

ROSS, Circuit Judge. The court below sustained a demurrer to the bill, and, the complainant declining to amend, judgment followed dismissing the bill at the complainant's cost. The appeal is from that judgment, so that the sole question presented is as to the sufficiency of the bill. The suit was brought by the Tillamook Water Company against Tillamook City, a municipal corporation of the state of Oregon, its mayor, recorder, treasurer, and councilmen, and against a board

of water commissioners appointed by virtue of a statute of the state to enable the city to provide a water system of its own. The alleged ground of the suit is that the city had previously entered into a contract with the complainant's predecessor in interest, one Orchard, by which he was authorized to supply the city and its inhabitants with water for municipal and other uses for a period of 30 years, and to lay and maintain in the streets and alleys of the city water mains, pipes, and connections for that purpose. The contract specified the time in which Orchard was to commence the work, and within which he should commence to furnish water. It provided for the construction of certain specific mains, and provided that other mains and pipes should be constructed when there should be four consumers who would take water upon certain specified terms. It provided that water should be furnished to consumers at rates not exceeding those specified, and for the attaching of hydrants to certain described mains by the city, and that the city should be entitled to water for fire and municipal purposes free of charge, except that for three years from the time the water should be first furnished the city should pay the sum of $40 per month for its use, and should "have the option of so continuing to receive water at the same rate after the expiration of three years." The contract also provided that, for each hydrant located upon the mains "constructed elsewhere than on the main line along First street, and the branches along blocks 2, 8 and 4 of the city," Orchard should be "entitled to extra pay as may in the future be agreed upon, not to exceed, however, the sum of $2.50 per month for each hydrant." The contract further provided that if, at any time after the expiration of four years from its date, the city should desire to purchase the plant with its privileges, easements, and property of every kind, it should have the option to do so by paying to Orchard or his successors in interest "a sum of money amounting to ten times the net proceeds derived by the party of the second part from the sale of water during the year ending with the exercise of this option by the party of the first part, after deducing (deducting) the running expenses for said year. That is to say, from the gross proceeds of the year previous to the purchase there shall be deducted the expenses of the company for operating the water line, the remainder so obtained shall be multiplied by ten, and the product so obtained shall be the sum which the party of the first part is to pay as purchase price. Said sale is not to include any machinery or appliances for the manufacturing of pipe."

The bill shows that, immediately after the execution of this contract, Orchard and his associates commenced the construction of the works contemplated and provided for, and expended, in carrying out the terms of the contract, more than $15,000, and after the completion thereof conveyed all of their rights to the complainant corporation. It is alleged that the city paid to the complainant $40 a month for the use of its water during the four years mentioned in the contract, and that after the expiration of the period the city "elected to continue the contract and exercise the option mentioned therein," however, with the understanding that thereafter it should pay only $30 per month for the use of water furnished by the complainant, instead of $40 per month,

as before expressed. It is alleged that the city and its inhabitants are being supplied with water by the complainant, as provided for in the contract, at a large profit to the complainant and its stockholders, and that the value of the complainant's said property is more than $14,-000. The bill further alleges that the city, by virtue of an ordinance of the city and an act of the Legislature of the state, which are specifically referred to, is proceeding to establish a water system of its own for the purpose of supplying the city and its inhabitants with water from another source than that of the complainant, the result of which will render the complainant's said property entirely valueless, which action on the part of the city, and which legislation of the state authorizing such action, it is alleged in the bill are in violation of the complainant's contract. The purpose of the suit was to enjoin this alleged wrong.

The plain and complete answer to the appellant's contention is that, by the contract upon which it relies, the city did not agree not to establish a water system of its own for the supplying of the city and its inhabitants with water. Not only is there no express agreement to that effect, but there is not a word or a syllable in the contract even tending in that direction; and, even if there was, the law is that a municipality cannot exclude itself from competition in such a matter by mere implication, for "we are to remember," said the Supreme Court, in the very recent case of Vicksburg v. Vicksburg Water Co., United States Supreme Court Advance Sheets, July 1, 1906, 26 Sup. Ct. 660, "the well-established rule in this court which requires grants of franchises and special privileges to be most strongly construed in favor of the public, and that, where the privilege claimed is doubtful, nothing is to be taken by mere implication as against public rights. This rule has been applied to a series of contracts in waterworks and land cases, and we have no disposition to detract from its force and effect, and, unless the city has excluded itself in plain and explicit terms from competition with the waterworks company during the period of its contract, it cannot be held to have done so by mere implication."

There is not in the contract here in question any exclusive privilege granted to the predecessor in interest of the complainant, even as against any other individual, company, or corporation. The case above cited, and those of Helena Waterworks v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245; Joplin v. Light Co., 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127; Skaneatcles Water Company v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585; Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; and Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165—are conclusive against the appellant, and leave nothing more to be said.

The judgment is affirmed.

MORROW, Circuit Judge, took no part in this decision.