Argued April 5; affirmed April 17, 1934

## COPELAND v. CITY OF WALDPORT

(31 P. (2d) 670)

*Mark V. Weatherford,* of Albany (Weatherford & Wyatt, of Albany, on the brief), for appellant.

*Oscar Hayter,* of Dallas (Geo. B. McCluskey, of Toledo, on the brief), for respondent.

CAMPBELL, J. The city of Waldport in Lincoln county was organized as a municipal corporation in

the year 1911 under the general laws of the state of Oregon, and adopted as its charter the charter provided by the general laws, Oregon Code 1930, § 56-401 *et seq.*:

"The mayor and aldermen shall compose the common council of any such city or town organized under this act, and at any regular meeting thereof shall have power to provide for lighting the streets, and furnishing such city or town and inhabitants thereof with gas or other lights, and with pure and wholesome water; and for such purpose may construct such water, gas or other works, within or without the city limits, as may be necessary or convenient therefor, and may allow the use of the streets and alleys of the city to any person, company or corporation who may desire to establish works for supplying the city and inhabitants thereof with such water or lights upon such reasonable terms and conditions as the council may prescribe; * * *"

Pursuant to the power granted in the above section, the city by its common council, on September 11, 1924, passed Ordinance No. 74, the parts of said ordinance, material to this cause, being as follows:

"An ordinance granting unto Zenas C. Copeland, his heirs and assigns, a franchise to erect, maintain and operate within the corporate limits of the City of Waldport, in Lincoln County, Oregon, a system of Water Works, for the period of (42) forty-two years, and granting to him and them the necessary use of the streets of said City for the purpose of laying water mains, water pipes, and to provide for the regulation thereof by the City of Waldport.

Be it ordained by the Common Council of the City of Waldport.

Section 1. That there is hereby given and granted to Z. C. Copeland, his heirs and assigns, the right of franchise, to erect, maintain and operate, for the period of (42) forty-two years from the passing of this

ordinance and approval thereof by the Mayor, and the publication thereof as by law required, a system of water works, including all water pipes, water mains, tanks, fixtures and machinery as may be necessary or convenient or usually maintained for the purpose of carrying on a system of water works, and to construct and erect in said City, all such buildings and machinery as may be necessary or convenient for such purpose, provided however, that no buildings or machinery shall be placed in such streets so as to obstruct the ordinary travel and use thereof.

Section II. That the said Zenas C. Copeland, his heirs and assigns, are hereby granted the right and privilege of laying water pipes and mains through all the streets and alleys of the City of Waldport for the purpose of conducting water through the City by means thereof and supplying the City of Waldport and the inhabitants thereof with water. That the ditches for the laying of said pipes and mains shall be at the depth of at least two feet below the surface, of the streets, that the work of digging said ditches and the laying of pipes and mains, or in repairing the same, within the streets of Waldport shall be completed as soon as practicable, and that the streets shall be placed in as good condition after said work as they were before and that all rubbish or unused material shall be removed from the streets subject to the approval of the street commissioner.

Section III. It is hereby agreed by the said Zenas C. Copeland, in consideration for this franchise, that he will construct and maintain a reservoir and water main to supply water for the City of Waldport and the inhabitants thereof, and if for any reason whatsoever after the passage of this franchise said Zenas C. Copeland, his heirs or assigns shall fail or neglect to commence active construction of said water system within six months from the passage of this ordinance, and fail to have same in operation by June 1st, 1925, fire or any act of God excepted or after said water system has been in operation said Zenas C. Copeland, his heirs or assigns shall fail to operate same and

supply service for a period of sixty days, then in that event this ordinance and franchise created thereby shall Ipso Facto cease and become null and void, provided that for good and sufficient reason the City Council may extend the time for beginning operation of said water system and in case of any discontinuation on the part of said Zenas C. Copeland, his heirs or assigns to operate said water system he shall upon notice from the constituted authorities of said City remove any and all pipes he may of placed under or along the streets or alleys within sixty days, and in case said Zenas C. Copeland, his heirs or assigns does not remove same, that the same at the option of said City become the property of said City, or said City may remove said pipes and charge the expense thereof to the said Zenas C. Copeland, his heirs or assigns.

Section IV. Zenas C. Copeland his heirs or assigns, shall install suitable fire hydrants under the supervision and approval of the City Council to be placed at such street intersections as may be designated by the Council, provided same shall be on water mains, cost of hydrants and installation to be borne by the City, but in all cases to be at the customary cost for such work and material, and in the event of a fire said Zenas C. Copeland his heirs or assigns shall furnish any and all of the available water supply for the purpose of fire protection without additional cost to the City.

Section V. That in case Zenas C. Copeland, his heirs or assigns shall have at any time an offer for the purchase of said water system including this franchise, that the said City shall have the option to purchase same for the same price offered by said purchaser.

Section VI. That the City of Waldport through its Common Council by legal ordinance regulate the price of water rates and connection charges for water sold within the corporate limits of the City of Waldport by the grantee herein, provided that no rate shall be established by said City of Waldport that shall be

lower than an average rate charged for water or connection charges under similar circumstances in the cities and towns of Oregon.

Section VII. That all pipes used for the purpose of conducting water under the terms of this ordinance shall be either galvanized or dipped iron or wood."

The ordinance then repealed all conflicting ordinances and declared an emergency.

Thereafter said Zenas C. Copeland, plaintiff herein, complied with all the conditions and requirements of the above ordinance, constructed a water system at an alleged cost of $13,000 and furnished water to the city and its inhabitants.

On November 16, 1927, the city, by a vote of its people adopted a new charter, containing, among other provisions, Article VIII which is as follows:

## "WATER SUPPLY

The city of Waldport has heretofore granted a franchise for the use of its streets for a water supply for said city, and subject to the rights existing under said franchise.

Section 1. The council shall have power to provide, construct, furnish and maintain a complete water system, and have control and charge of the same and do all things necessary to carry into effect the provisions of this Charter.

Section 2. The council may from time to time prescribe rules and regulations for the management of such water system, both during the process of construction and after the same has been completed.

Section 3. All moneys received by the said city to be used for the water system and all money received for water or in any way arising from the water system or which may properly belong to the water system shall immediately be turned over to the Treasurer of the said city and by him placed in the water fund, and the same shall be paid out in the same manner as other funds of the city are paid out."

Article IX, § 5, of said charter, reads as follows:

"Before submitting propositions to the electors for the acquisition by original construction, purchase or condemnation of public utilities of like character, the council must solicit and consider offers for the sale to the city of existing utilities, if any such there be adequate for the purpose of the city, in order that electors shall have the benefit of acquiring the same at the lowest possible cost therefor."

After the adoption of the said ordinance, defendant demanded that plaintiff increase the storage capacity of his water system, which he did, in and during the years of 1927 and 1931, at a cost of $2,000.

On December 30, 1929, the city, by general election, repealed said article VIII and adopted an amendment to said charter designated as article XV, which authorized the city "to acquire, construct, purchase, own, maintain, manage and operate a complete system of water works." Article XV further provided the manner of acquisition or construction of said waterworks; the manner of raising funds to finance the same, and the power to purchase or condemn any waterworks then existing within or without the corporate limits of the city so as to enable the city to secure for itself a system of waterworks.

On December 6, 1931, defendant solicited of plaintiff a price and offer for the sale of plaintiff's water system to defendant. Thereafter the plaintiff made an offer to sell the city, for the sum of $13,000, his waterworks, on which offer defendant, by its council, took the following action:

"Moved by Hallmark, seconded by Quigley, that communication from A. C. Copeland be tabled. Motion carried."

No further action was taken by the city as to plaintiff's offer. The city thereafter constructed a water system, and disconnected the service pipes of itself and those of its inhabitants from the water system of plaintiff.

The plaintiff brought this action to recover from the city the cost of constructing his water system and the net profits he would have realized during the life of the franchise, the total sum asked for being $42,-508.05, and alleging substantially the foregoing facts in his complaint.

To the complaint the city filed a demurrer on the grounds that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court with leave to plaintiff to amend. The plaintiff stood on his complaint and refused to amend. Judgment was entered for defendant for its costs and disbursements. Plaintiff appeals.

The sufficiency of the complaint, which is the sole question before us can best be determined by an analysis of the franchise of appellant. Briefly, the rights given to appellant by virtue of his franchise are as follows: The appellant was given permission to use the streets and alleys of defendant in which to lay mains and pipes and to furnish water to the inhabitants of the city, for a term of years, which he agreed to do. The franchise contains no provision that the city will not construct a competing water system nor a provision that the city will not grant a franchise to a third party to construct a water system nor a provision that excludes either the city or any third party from constructing and operating a competing water system.

Respondent's original charter, as well as the one adopted by the voters of the city in a general election, gave respondent the right to construct, operate and maintain its own water system.

▉▉ The question of whether or not the franchise of appellant was a contract for an exclusive privilege for a term of years to furnish water to respondent and its inhabitants, even though there is no express provision granting it such a privilege, is well settled in the case of *Tillamook Water Company v. City of Tillamook,* 139 Fed. 405. This case was decided in the United States Circuit Court for the District of Oregon and the opinion therein answers the contentions of appellant and discusses the cases supporting those contentions as follows:

"The whole question depends upon the nature of its contract with the complainant. There can be no doubt that the grant of an exclusive privilege to a water company to lay water pipes and furnish the inhabitants of a city with water for a stated period of time, accepted and acted upon by the company, is the grant of a franchise given in consideration of the performance of a public service, and is protected against hostile legislation by the state and by the municipality. New Orleans Gas Company v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; New Orleans Water Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; St. Tammany Waterworks v. New Orleans Waterworks, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563. Nor can there be any doubt that, if a municipality has covenanted that during the life of the privilege it will not institute works of its own, it would be an impairment of the obligation of its contract to institute, before the expiration of that period, a waterworks system to be owned and operated by the municipality. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. But the city of Tillamook gave to complainant's grantor no exclusive privilege

or franchise, nor did it covenant, as in the Walla Walla Water Case, that it would not erect, maintain, or become interested in any other waterworks.

"The principles which must control the decision of the present case are to be found in Charles River Bridge Co. v. Warren Bridge Co., 11 Pet. 420, 9 L. Ed. 773, 938; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165; Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; Skaneateles Water Co. v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585; Joplin v. Light Co., 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127, and Helena Waterworks v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245."

The court then calls attention to the fact that in the *Charles River Bridge Co. v. Warren Bridge Co.,* cited above, the Supreme Court of the United States laid down the general doctrine that public grants are to be construed strictly and that nothing passes by implication. The court further states:

"The case of Helena Waterworks v. Helena is directly in point. The contract in that case was substantially identical with that which is under consideration in the present case, with the exception that it contained a stipulation that the grant was not to be exclusive of the right of the city to contract with another company. That stipulation, however, had no bearing upon the decision of the case, for the city of Helena gave no franchise to any other company, but was about to take steps to secure a water supply, to be owned and controlled by itself. The court referred to the fact that the ordinance contained no express stipulation that the city should not build a plant of its own, and, referring to the decisions above cited, said:

" 'These cases hold that a grant of a franchise does not of itself raise an implied contract that the grantor will not do any act to interfere with the rights granted to the waterworks company, and that in the absence of a grant of an exclusive privilege none will be

implied against the public, but must arise, if at all, from some specific contract binding upon the municipality.'

"The decision in that case is a complete answer to the contention made, in this: that the complainant herein entered into a binding contract whereby it agreed to furnish water to the inhabitants of the city of Tillamook for the period of 30 years. The contract in that case contained a similar covenant upon the part of the Helena Water Company; but the court said that, although the contract bound the company to furnish water to the inhabitants of the city of a term of 20 years, there was nothing in the contract to bind the inhabitants of the city to take water from the company, and that the city had not and could not undertake to make any contract upon the subject of the private supply of individuals and the city, beyond securing a maximum rate of charge for water supply. The court found nothing in the contract to prevent the city from constructing its own plant."

The court discussed the case of *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1 (19 S. Ct. 77, 43 L. Ed. 341), and remarked that the appellant based much of his contentions upon it (as does the appellant in the instant case). In the Walla Walla water case, there was not an exclusive privilege granted to the water company, but the city had bound itself not to engage or become interested in the water business during the term of the contract.

The Tillamook case, with which the instant case is identical, was appealed to the United States Circuit Court of Appeals (*Tillamook Water Co. v. City of Tillamook,* 150 Fed. 117) and the appellate court said in affirming the lower court:

"The plain and complete answer to the appellant's contention is that, by the contract upon which it relies, the city did not agree not to establish a water sys-

tem of its own for the supplying of the city and its inhabitants with water. Not only is there no express agreement to that effect, but there is not a word or a syllable in the contract even tending in that direction; and, even if there was, the law is that a municipality cannot exclude itself from competition in such a matter by mere implication, for 'we are to remember' said the Supreme Court, in the very recent case of Vicksburg v. Vicksburg Water Works Co., United States Supreme Court Advance Sheets, July 1, 1906, [202 U. S. 453] 26 Sup. Ct. 660, [50 L. Ed. 1102, 6 Ann. Cas. 253] 'the well-established rule in this court which requires grants of franchises and special privileges to be most strongly construed in favor of the public, and that, where the privilege claimed is doubtful, nothing is to be taken by mere implication as against public rights. This rule has been applied to a series of contracts in waterworks and land cases, and we have no disposition to detract from its force and effect, and, unless the city has excluded itself in plain and explicit terms from competition with the waterworks company during the period of its contract, it cannot be held to have done so by mere implication.' "

■ Appellant further contends that after he had constructed his plant, and was engaged in complying with his franchise, the city passed an amendment to its charter (Article IX, § 5, *supra*) which should inure to his benefit. We cannot see how that enactment has any effect on his rights. Whatever rights he has must be derived from Ordinance No. 74, *supra*, granting him his franchise. Section 5, Article IX, would appear to have been enacted for the benefit of respondent. This is an action for damages and not a suit by a taxpayer to protect the city from the alleged inconsiderate action of the city council. So far as appellant is concerned, respondent through its city council solicited an offer of sale and a price from him for his plant and

gave his offer at least sufficient consideration to lay it on the table. The above charter provision does not say what or how much consideration was to be given. However, we must assume that the city council acted upon due consideration when it decided to and did construct its own water system and this was sufficient to inform appellant that his offer had been rejected. When the city council decided to build its own system, it was acting in its legislative or governmental capacity and reasons by which it was actuated, so long as it was acting without fraud and within the scope of its authority, will not be questioned in this kind of an action.

It will serve no useful purpose to discuss in detail all the other cases cited in the briefs of counsel as we deem the decision in *Tillamook Water Co. v. Tillamook, supra,* a complete answer to all contentions of appellant.

The judgment of the circuit court will be affirmed. It is so ordered.

RAND, C. J., and BEAN and BAILEY, JJ., concur.