NEAL v. SAN ANTONIO WATER SUPPLY CO. (No. 6305.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 31, 1919. Rehearing Denied Feb. 4, 1920.)

1. MUNICIPAL CORPORATIONS ☞61—CITY REQUIRED TO FURNISH RESIDENTS WITH WATER, LIGHTS, STREETS, ETC.

It is the duty of municipal governments to furnish citizens with all such necessary utilities as water, lights, streets, and such other public conveniences as are necessary for their protection and benefit; but it may contract with some other person or corporation to perform that service for it.

2. WATERS AND WATER COURSES ☞195—WATER COMPANY NOT LIABLE FOR INJURIES FROM CURB COCK BOX IN SIDEWALK NEGLIGENTLY INSTALLED BY OWNER.

Water supply company under contract with city to furnish residents of city with water, giving the company the exclusive control of the repairing and installing of water service pipes and appurtenances, including curb cock box between mains and property lines, but providing that it should not be liable for damages not growing out of its own independent, unlawful acts, was not liable for injuries to pedestrian from curb cock box negligently installed by owner.

Error from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by H. B. Neal against the San Antonio Water Supply Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Lewright & Douglas, Chas. F. Guenther, Jr., and W. M. Lewright, all of San Antonio, for plaintiff in error.

Augustus McCloskey and Taliaferro, Cunningham & Birkhead, all of San Antonio, for defendant in error.

COBBS, J. This suit was instituted by H. B. Neal, plaintiff in error, against the San Antonio Water Supply Company, defendant in error, to recover the sum of $25,000 for personal injuries sustained by his wife; also for $305, expenses incurred for physicians, nurses, drugs, etc. The suit is based upon injuries resulting from a fall, caused by a cut-off or curb cock box in the middle of the sidewalk in front of the premises at No. 251 West Theo avenue, over which she tripped and fell while walking along said sidewalk, and without any fault of hers. Said obstruction protruded eight or nine inches above the surface of the ground.

The defendant in error was engaged in supplying water to the inhabitants of the city of San Antonio, and the curb box over which petitioner fell had been installed in connection with the said water supply service between the property line and the curb line of the premises. Plaintiff alleges that the said curb box was installed for the exclusive use of the water supply company, not for the use of the consumer; that the water supply company, defendant in error, was operating under a water contract made with the city of San Antonio, giving it the exclusive control of all repairing, all installing of new water service pipes and appurtenances, and of the replacing of existing ones between the company's mains and the property line of consumers, including the curb cock and curb box between the mains and the property line.

The special negligence was alleged in the following particulars:

"(a) In permitting said curb cock box to be installed and maintained in the middle of the sidewalk and to protrude above the surface of the ground; and in this connection it is alleged that defendant was negligent in that its inspector allowed the said faulty installation, or said inspector was negligent if he failed to discover the defective installation, and defendant was likewise negligent in afterwards failing to discover the fact that said curb cock box had become more dangerous by the wearing away of the surrounding surface of the earth.

"(b) That the water company was negligent in not detecting that said curb cock box was a dangerous obstruction in said sidewalk, since, as a matter of law, the duty devolved on said defendant to inspect this fixture which was placed in a public thoroughfare by the requirements of said company because it was placed for the use of said water company, primarily, if not exclusively, or at any rate for the joint use of the water company and the consumer; and, moreover, because since 1914 the water company was given the exclusive management

and control thereof as aforesaid by the contract ordinance entered into between the water company and the city."

The defendant in error answered by exceptions and general denial.

The court peremptorily instructed a verdict in favor of the defendant in error. Plaintiff in error filed formal written objections to the giving of peremptory instruction, which were overruled, and judgment was rendered in favor of the defendant in error on the instructed verdict of the jury.

Plaintiff in error filed proper objections to the rulings of the court and properly saved exceptions, and has presented this case before this court with proper assignments and propositions raising all the questions necessary for a decision of this case.

We adopt so much of the statement of facts set out in plaintiff's brief as we think necessary for a disposition of the question:

From June 12, 1902, until May 30, 1914, the waterworks company operated in the city of San Antonio under a contract ordinance giving it a right to use the streets, etc.

About the year 1908, one B. F. Dittmar laid out and put on the market for one Priest the property fronting on West Theo avenue in the city of San Antonio.

Under date of May 27, 1908, B. F. Dittmar applied to the water company for a 2½-inch tap between South Flores and Lichen streets to supply a pipe running 1,379 feet on Theo avenue.

Under date of January 18, 1909, B. F. Dittmar gave Edgar Gray a permit to tap the aforesaid private pipe line.

In December, 1908, Edgar Gray built a home at 251 West Theo avenue. He later obtained a permit from the water company to tap their main and employed a firm of plumbers to install his service connections. A curb cock and curb box was installed about 36 inches from the property line, and it stuck up above the surface of the ground about two inches.

At that time (in 1909) the water company required that a curb cock and curb box be placed in the service line between the curb and the property line. It was usually placed about six inches from the property line, but the company was not particular, so long as it was placed between the property line and the curb. The company would not tap the main for the service pipe unless this curb cock was installed, and their "tapper" saw to it that the curb cock was installed as required by the rules of the company.

The water company continued to use the Dittmar pipe line as a part of their system, supplying water through it to customers for a profit.

The water company furnished the tap for connecting Gray's service line to the Dittmar main, but Gray paid for the tap. The water

company also made the tap; that is, installed it.

Gray never paid Dittmar, nor Priest, nor any one except the water company, for the water service from the time it was installed.

Neither Dittmer nor Priest ever did anything towards the maintenance, repair, or upkeep of the Dittmar pipe line on West Theo avenue from the time it was installed. Dittmar saw some leaks in the West Theo avenue main, and afterwards noticed they were repaired, and neither he nor Mr. Priest had anything to do with these repairs.

The ordinance contract between the water company and the city of San Antonio of date March 30, 1914, provides (in so far as is applicable to the facts of this case) as follows:

(a) The water company agrees to furnish water at its mains: To each individual consumer or property owner in said city, who shall have and maintain in good repair suitable and durable pipe connected with said mains, and service connections from said mains or pipes to the property line of such consumer or owner, with proper and accessible curb cocks and curb boxes.

Where and when hereafter the present old service connections shall be out of repair between the second party's mains and the property line of the consumer or owner, they shall be replaced with new service connections, and such replacements shall be done by the water company at the expense of the consumer or owner of the property, who shall pay to the water company the full cost of labor and materials necessary to lay suitable and durable service pipes, with all proper and usual fittings, including curb cock and curb box, from such mains to said property line, together with the cost of city permit and of replacing street pavements and sidewalks; and all such service connections so laid by the water company replacing old service connections shall thereafter be the property of the water company and shall be kept in repair by the water company.

(c) The water supply company shall in no event be responsible for damage to person or to property arising from defective or inadequate service connections or appurtenances, now owned or hereafter laid or owned by individuals.

It shall be unlawful for any one, without the written consent of the water supply company, to bore or drill into any water main, or make attachments with them or with the service pipe connected to them.

(i) Where any curb cock or curb box on any service existing at the date of this contract is out of repair, the water company may repair or supply the same at the expense of the owner of the premises or occupant.

Mr. Gray testified:

"I had an inside cut-off or stop and waste box inserted in the yard. This was put on in case of freeze so I could turn the water off and save the pipe from freezing and bursting, and turn it back on—put that on inside for my own use. I didn't have any individual use for the curb cock and box between the curb line and property line at the time it was put in. I don't know whether I had used that outside cut-off up to February, 1915, or not."

Weierhauser, superintendent of the water company, testified that the cut-off at the water main in the street two feet underground, "is the only cut-off I felt the company was interested in until the new contract took effect." (This refers to the contract of March 30, 1914.)

Edward Gray, the owner of the premises at 251 West Theo avenue, had the water service in question installed by Lightfoot & Teel, plumbers, in 1909, at his own expense. Plumber Lightfoot testified that he was familiar with the rules of the water company at that time. He said: "The consumer first sent to the waterworks office and made application for a 'tap' to the mains." He then got his plumber and laid his pipe under city regulations. The water company would send out its "tapper" to connect the service pipe thus laid to the water main. The water company required that a curb cock and curb cock box of a certain kind should be placed between the property line and the curb, and unless this was done the "tapper" would not give the connection with the main.

Gray also had a cut-off on the inside of his premises, to use in case of freezing weather, etc. There was testimony that the water main tapped into for Gray was installed by one B. F. Dittmar, but the testimony is that the water company took over said privately laid main and used it as a part of its system.

"The accident occurred on the 8th day of February, 1915, when H. B. Neal and his wife, Sallie, were walking along the sidewalk on West Theo avenue. Mrs. Neal stumbled upon and fell over a water plug in front of the premises at 251 West Theo avenue. The water plug (or curb box) protruded above the surface of the ground about nine inches at this time; at the time of its installation, it only protruded a short distance—about two inches. The wear due to the weather and walking of people caused the earth to wear away from around the box. The curb cock box is in the sidewalk about 36 inches from the property line."

Mrs. Neal testified: "I didn't know there was any water plug or anything there. I had never seen it before." The proof showed that the cut-off box was installed by Edgar Gray in front of his residence in January, 1909, and that the defendant in error had no main in Theo avenue; the mains being in Flores street. The pipe in Theo avenue was laid and owned by Dittmar, and persons, including Gray, had to get his consent to use it. The water company never sold water except at its main, and water consumers were required to arrange for their own pipes and connections to it. It was shown the water company made no claim to this pipe line and had nothing to do with its control or laying it; that property owners always installed the curb cock box.

The contract with the city, as above, shows that while repairs "shall be done by the wa-

ter company at the expense of the consumer or owner of the property who shall pay to the water company full cost of labor and materials necessary to lay suitable and durable service pipes, with all proper and usual fittings, including curb cock and curb box," etc.

The contract; as seen, provides the waterworks company "shall in no event be responsible for damages to persons or to property arising from defective or inadequate service, connections, or appurtenances," etc.

[1, 2] It is the duty of municipal governments, which are public agencies, to furnish her citizens with all such necessary utilities, as water, lights, streets, and such other public conveniences as are necessary for their protection and benefit. It may contract with some other person or corporation to perform that service for it, just the same as it could do. It has here made the contract with defendant in error to furnish her citizens with water, and provided under certain conditions the water company shall not be liable for damages not growing out of its own independent, unlawful acts, but caused by the failure of the citizen to perform his part of the obligation to secure the services as in this case. Predicating the suit for tort upon the breach of duty growing out of that contract, made for the benefit of the citizens, the litigant must be governed by all its terms.

Our Supreme Court, in the case of House v. Houston Waterworks Co., 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532, opinion by the late Judge Brown, in a very carefully prepared opinion, laid down the rules of negligence in such contracts, and says:

"The true question always is: Has the defendant committed a breach of duty apart from the contract? If he has only committed a breach of the contract, he is liable only to those with whom he has contracted; but, if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another."

This contract was not made with plaintiff in error as a class to which he belongs, by virtue of which appellant would have a right to sue for damages for injuries for which the defendant has contracted to indemnify, but the very contract, the basis of the suit, guarantees protection to the waterworks company against such actions. There is no privity. House v. H. W. Co., supra.

The contract in this case is unlike the contract described in Washington Gas Co. v. District of Columbia, 161 U. S. 325, 16 Sup. Ct. 564, 40 L. Ed. 712, relied upon by petitioner. There all the pipes and connections were required to be made and maintained by the company and every duty imposed upon the gas company to construct and maintain and operate and in no sense relieved from liability or duty in respect thereto, by its charter.

Here the defendant in error did not place the cut-off box in the sidewalk, and it was no part of its duty under the contract to do so, and it owed no duty to plaintiff in error by reason thereof.

This case is almost "on all fours" with the case of San Antonio Water Supply Co. v. Castle, 199 S. W. 300, decided by this court, and we regard what was said there, on a similar contention, applies here. The court in that case said:

"If the evidence had been of such a character as to go to the jury, that is, if there had been an admission that the waterworks company installed the cut-off box, or testimony to that effect, special charge No. 4 should have been given, as it affirmatively presented the water company's defense that in 1907 the cut-off box was taken out and put back in, and, if the condition complained of by plaintiffs was then brought about by some one other than the water company, it would not be liable. Railway v. McGlamory, 89 Tex. 635, 35 S. W. 1058; Railway v. Rogers, 91 Tex. 58, 40 S. W. 956. The eleventh assignment is therefore well taken, and must be sustained."

We have considered all the assignments, and they are overruled, and the judgment is affirmed.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes