**STATE v. CENTRAL POWER & LIGHT CO.**
No. 3764.

Court of Civil Appeals of Texas. Beaumont.
Jan. 23, 1941.

Rehearing Denied Feb. 5, 1941.

Gerald C. Mann, Atty. Gen., and W. R. Koch, Pat Coon, F. B. Isely, Ocie Speer, and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, and Looney & Clark, of Austin, for appellee.

WALKER, Chief Justice.

The appeal was prosecuted by appellant, the State of Texas, to the Austin Court of Civil Appeals from the judgment of the district court of Travis county, sustaining the general demurrer to its petition against appellee, Central Power and Light Company. The case is on our docket by order of transfer by the Supreme Court.

We make the following summary of appellant's petition: (a) The State of Texas was plaintiff; Central Power and Light Company, a Massachusetts corporation with a permit to do business in Texas, was defendant. (b) "On such dates as hereinafter are more specifically set out, and on such other dates as are to the plaintiff unknown, but well known to the defendant, the defendant entered into conspiracies and formed trusts and combinations of its capital, skill and acts between itself and others hereinafter named, and made and entered into agreements and conspiracies and did the acts and deed hereinafter more specifically set out for the following purposes, to-wit:

"1. To create, and which tended to create, and carry out restrictions in trade and commerce and aids to commerce, and in the preparation for market and transportation of electric light and motor power, and to create and carry out restrictions in the free pursuit of said business which is authorized and permitted by the laws of this State.

"2. To fix, maintain, increase and reduce the prices of electric light and motor power, and of the preparation of said products for market and transportation within the State of Texas.

"3. To present and to lessen competition in the manufacturing, making, marketing, transportation, sale and purchase of electric light and motor power within the State of Texas.

"4. To fix and maintain standards and figures whereby the price of electric light and motor power, and also the preparation of electric light and motor power for market might be, and were, affected, controlled, and established in the State of Texas.

"5. To make and enter into, maintain, execute, and carry out contracts, agreements, and obligations, by which the defendant bound other parties not to sell, dispose of and prepare for market electric light and motor power, and to make contracts by which they agreed to keep the price of such commodities at fixed figures, and by which they affected and maintained the price of such commodities; and which did preclude free and unrestricted competition among the defendant and others in the marketing and sale of such commodities within the State of Texas.

"6. To abstain and to cause others to abstain from engaging and continuing in the business of marketing electric light and motor power within the State of Texas.

"The manner in which said conspiracies, trusts, and combinations were created and carried out is hereinafter more specially set out." (c) The manner of the execution of the conspiracy was plead in detail. (d) On the 11th day of March, 1936, the City Council called an election to determine whether or not the City of Yorktown, incorporated under the general laws of the State of Texas with all the rights granted to such a city under Title 28, R.C.S.1925, Vernon's Ann.Civ.St. art. 961 et seq., would vote bonds to the amount of $65,000 "for the purpose of acquiring a municipal lighting and power system for generating and distributing electric current for the use by and for the sale by the city." The election was held on the 3rd day of April, 1936, with 204 votes for the issue and 171 against. (e) The defendant, its agents, employees, and other persons, "combined their capital, skill, and acts in an effort to prevent and lessen competition in the manufacture, making, transportation, distribution, and sale of electric light and motor power by attempting to defeat the election called to authorize the City Council of the City of Yorktown, Texas, to issue bonds to construct their own electric light and power plant and distributing system." The petition detailed five specific acts committed by the defendant in its effort to defeat the election. (f) "On or about October 18, 1937, the defendant proposed to members of the City Council of the City of Yorktown, Texas, that they forego the building of their own municipal plant, which plant would be a competitor of the defendant company, and in return for this agreement on the part of the city, the defendant would pay the city a cash consideration, and make other valuable concessions. The following memorandum of agreement was entered into by the defendant and the City Council of Yorktown

and the mayor and members of the City Council of Yorktown in their individual capacities on or about October 18, 1937:

" 'State of Texas
" 'County of Dewitt

" 'This memorandum of agreement entered into this 18th day of October, 1937, by and between the City of Yorktown, Texas, acting by and through its duly authorized Mayor and City Secretary, hereinafter referred to as "City", and Central Power and Light Company, a Massachusetts corporation, with a permit to do business in Texas, acting by and through its duly authorized President and Secretary, hereinafter referred to as "Company", Witnesseth:

" 'Whereas, heretofore, on the 3rd day of April, 1936, a majority of the qualified voters of the City of Yorktown, at an election called and held in pursuance to a Resolution of the City Council of the City, of Yorktown, voted to authorize the City Council of the City of Yorktown to issue Lighting and Power Revenue Bonds of said City in the sum of Sixty-five Thousand Dollars ($65,000.00) for the purpose of erecting and constructing an electric light and power plant and street lighting and distributing systems in and for the City of Yorktown, Texas; and

" 'Whereas, the said City of Yorktown had theretofore, on August 21, 1935, applied to the Federal Emergency Administration of Public Works for a grant to aid it in the construction of an electric light and power plant and street lighting and distribution systems; and

" 'Whereas, the said Federal Emergency Administration of Public Works offered, by proposal dated December 11, 1935, to assist the said City of Yorktown in constructing an electric light and power plant and street lighting and distribution systems by way of a grant; and

" 'Whereas, the City Council of said City on the 7th day of January, 1936, adopted a resolution purporting to accept said grant; and

" 'Whereas, the City Council of the City of Yorktown now deems it advisable, and not to the best interests of the City of Yorktown, and its citizens, to construct and own and operate a municipal electric light and power plant; and

" 'Whereas, the City has made expenditures and created obligations in the sum of approximately Ten Thousand Dollars ($10,000.00) in preparation for the erection and constructions of an electric light and power plant and electric street lighting and distribution systems, and Company is willing to reimburse City said sum upon the terms and conditions hereinafter stated;

" 'Now, Therefore, It Is Agreed:

" '(1) Company will pay City the sum of Ten Thousand Dollars ($10,000.00) to fully reimburse it for any and all expenditures made and obligations erected in connection with its purpose to erect and construct an electric light and power plant and street lighting and distribution systems.

" '(2) The City will not issue, sell or offer for sale bonds of the City which the City Council is authorized to issue by the election held on April 3, 1936.

" '(3) The application made by the City to Federal Emergency Administration of Public Works of the United States of America for a grant or loan to aid in financing the construction of an electric light and power plant and electric street lighting and distribution systems shall be withdrawn forthwith, and the Resolution adopted by the City Council on the 7th day of January, 1936, known as Resolution No. 1, and shown in the Minutes of the City Council of the City of Yorktown in Volume 1 at page 37, shall be repealed and rescinded by proper action of the City Council in form and manner to be approved by attorneys for the Company, and any and all contracts and agreements, whether made by offer and acceptance or otherwise, between the City and Federal Emergency Administration of Public Works for aid to the City in financing construction of an electric light and power plant and street lighting and distribution systems will be rescinded and canceled.

" '(4) The City has this day entered into a contract with Company for the purchase from Company for a period of ten years from date thereof, of electric energy for municipal water pumping, and said contract shall be fully performed for the entire term thereof.

" '(5) Company has this day entered into a contract with the City for the purchase from City of water in the amount of not less than Three Hundred Dollars ($300.00) worth each year for a period

of ten years, for use at ice plant located in Yorktown, and Company shall fully perform said contract for the entire term thereof.

" '(6) During the period of ten years which the said contracts described in paragraphs (4) and (5) above are in effect, City agrees not to build, erect or construct, nor attempt to build, erect or construct, or have built, erected or constructed, either directly or indirectly, an electric light and power plant and street lighting and distribution systems, or either or any of them, nor issue or attempt to issue the bonds authorized by the election held on April 3, 1936, or any other securities of any sort whatever, for the purpose of erecting or constructing an electric light and power plant and street lighting and distribution systems, or either of them.

" '(7) The City Council of the City of Yorktown shall pass all ordinances and resolutions, either or both, necessary to carry out the intent of this agreement in such form and manner as are satisfactory to counsel for Company.

" '(8) The sum of Ten Thousand Dollars ($10,000.00) to be paid to City by Company shall be placed in escrow in the First National Bank of Yorktown, Texas, and when such necessary ordinances and resolutions referred to in this Agreement have passed and approved, when the application or applications to the Federal Emergency Administration of Public Works for aid has been withdrawn, when the Contract or Agreement with Federal Emergency Administration of Public Works for aid in the form of a grant has been rescinded and cancelled and when the Contract for sale of electric energy by Company to the City for water pumping is authorized and executed, and when contract for sale by the City to the Company of water for use at Company's ice plant as above mentioned is authorized and executed, then said bank, acting as escrow agent, shall be and is authorized to turn over and deliver to the City of Yorktown, the sum of Ten Thousand Dollars ($10,000) so placed in escrow.

" 'In Witness Whereof, the City has caused this instrument to be executed by its Mayor and City Secretary and attested with its corporate seal, and the Company has caused same to be executed by its President and Secretary, as of the 18th day of October, 1937.

" 'City of Yorktown

" 'By W. Westhoff
" 'Mayor
" 'Attest:      " 'City
" 'R. F. Senf
" 'City Secretary

" 'Central Power and Light Company
" 'Attest:
" 'W. D. Boone    " 'By James C. Kenney
" 'Secretary          President
                     Company.' "

It was further alleged that the parties to the contract duly executed its obligations. (g) "Since October 18, 1937, the contract set out in full in paragraph VII, (paragraph (f) supra) herein, has been in existence between the defendant and the City of Yorktown, and the Mayor and members of the City Council of Yorktown in their individual capacities, which combination has successfully prevented and lessened competition, restrained trade and blocked the channels of normal business in the manufacture, sale and purchase of electric light and motor power, and the defendant who has wilfully and intentionally prevented and lessened competition in the manufacture, sale and purchase of electric light and motor power, and by the contract set out in paragraph VII, (paragraph (f) supra) above, has prevented the City of Yorktown from carrying out the mandate of its citizens as expressed in the election held for the purpose of determining whether a municipal light and power plant and distributing system should be constructed." (h) It was further alleged that, on the facts stated in the petition, the defendant had become liable to the plaintiff for the penalties provided by Articles 7426—7447, the Anti-trust Statutes. The prayer was for judgment for the penalties and for injunctive relief restraining the defendant "from carrying out the agreements, conspiracies, trust and combinations within the State of Texas." The prayer was also for general relief and for special relief in particulars not necessary to enumerate.

### Opinion.

■ We give appellant's sixth proposition: "The court erred in sustaining defendant's general demurrer, because the contract or agreement between appellee and the city of Yorktown, pleaded by plaintiff, is an attempt to grant an exclu-

sive franchise to appellee and creates a monopoly and unlawful combine in violation of the anti-trust laws and Constitution of Texas."

If the contract in issue between appellee and the City of Yorktown granted appellee an exclusive franchise, it thereby created a monopoly and an unlawful combine in violation of the anti-trust laws of the State and of Section 26 of Article I of the state constitution. It is the law of this state that no city can grant an exclusive right to furnish either water or light. City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143.

On the following conclusions, it is our judgment that the contract in issue did not create a monopoly and an unlawful combine in violation of our anti-trust laws.

■ (1) The manifest purpose of the contract—the controlling purpose as between the contracting parties—was to furnish electric power to the City of Yorktown and its citizens. The City had the legal right to effectuate this purpose by contract with appellee. Neal v. San Antonio Water Supply Co., Tex.Civ.App., 218 S.W. 35; in the City of Brenham case, supra [67 Tex. 542, 4 S.W. 147], our Supreme Court said: "Taking all the laws into consideration, we cannot doubt the power of the city to make some contract through which the city might be furnished with water. * * * The legislature has also given power to every city within which one or more private corporations may have water-works to contract with one or all of them, and the further power to permit the use of its streets and other public grounds for the purposes of such works contemplated by the statute, by as many water companies as may desire to do so."

So, to the extent that the contract empowered appellee to furnish electric power to the City and its citizens, simply in that respect, the contract did not violate our anti-trust statutes.

■ (2) Article 962, R.C.S.1925, gave the City of Yorktown the power of "contracting and being contracted with," and to "take, hold and purchase, lease, grant and convey such real and personal or mixed property or estate as the purposes of the corporation may require." By Article 1108 the City had the power to construct, operate and own an electric light system.

Bass v. City of Clifton, Tex.Civ.App., 261 S.W. 795; West Texas Utilities Co. v. City of Spur, 5 Cir., 38 F.2d 466. These points must be conceded, because the bonds described in appellant's petition were voted for the purpose of installing an electric light system. So, the act of executing the contract did not violate our anti-trust statutes.

(3) Had the bonds been sold and the electric system installed with the proceeds of the sale, by complying with the provisions of Articles 1112 and 1118a, Section 2, the City would have had the power to sell the plants, and, on authority of Article 1268, to sell even to a competing system. The moving purpose of Article 1268 was thus stated in the emergency clause: "The fact that the operation in many cities, towns and villages within this State of two or more electric, gas or water plants results in inefficient service and imposes a needless burden upon the people thereof * * *." Acts 24th Leg., Reg. Sess., p. 131.

The fact that these articles of the statute authorized the City to sell its electric system only on a majority vote of its citizens is immaterial on this issue. If such a sale was in violation of our anti-trust statutes, the vote of the citizens would not make it lawful. But that is not appellant's point—the want of power in the City of Yorktown to sell the improvements made by it in its attempt to erect the plant. The City had the power to make the contract in issue, except wherein the contract was inhibited by Section 26 of Article I of the Constitution, Vernon's Ann.St., and by our anti-trust statutes. If that proposition were not sound, appellant's petition would be subject to the general demurrer, without relation to our anti-trust statutes. It follows that the only point at issue between appellant and appellee is whether in making the contract, the contracting parties hedged it about with conditions inhibited by Section 26 of Article I of the Constitution and our anti-trust statutes.

■ As we understand appellant's brief, the following conditions of the contract are advanced as making it void: "(1) Company will pay City the sum of Ten Thousand Dollars ($10,000.00) to fully reimburse it for any and all expenditures made and obligations erected (incurred) in connection with its purpose to erect and

construct an electric light and power plant and street lighting and distribution system."

This section of the contract was not illegal; having the power to sell the instrumentalities named therein, the City of Yorktown had the power to name and agree upon the consideration. This section goes no further than to fix the consideration. "(4) The City has this day entered into a contract with Company for the purchase from Company for a period of ten years from date thereof, of electric energy for municipal water pumping, and said contract shall be fully performed for the entire term thereof."

The fact that the contract was to run for ten years does not make it violate our anti-trust statutes. On this point, in the City of Brenham case, supra, our Supreme Court said: "We do not wish to be understood to hold that a municipal corporation has no power, in any event, to contract for such things as are consumed in their daily use, for a period longer than the official term of the officers who make the contract; but we do intend to be understood to hold that such corporations have no power to make contracts continuous in character, in reference to such things or any others, by which they will be, in effect, precluded from exercising from time to time any power, legislative in character, conferred upon them by law."

Nothing in this clause of the contract precluded the City of Yorktown from exercising from time to time any power, legislative in character, conferred upon it by law. In the City of Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341, on all fours with the facts of the case at bar, the Supreme Court of the United States held that a contract for a continuous supply of water and the payment of rentals for twenty-five years did not preclude the City of Walla Walla from exercising from time to time its legislative power, in relation to securing a supply of water, conferred upon it by law.

"(5) Company has this day entered into a contract with the City for the purchase from City of water in the amount of not less than Three Hundred Dollars ($300.00) worth each year for a period of ten years, for use at ice plant located in Yorktown, and Company shall fully perform said contract for the entire term thereof."

This section of the contract contains no "exclusive" element. Appellee, by this section, did not contract with the City of Yorktown to purchase from it all the water needed to operate its business. It simply contracted to buy "not less than Three Hundred Dollars ($300.00) worth each year for a period of ten years." Clearly, this section does not fall within the inhibition of the City of Brenham case, supra.

"(6) During the period of ten years which the said contracts described in paragraphs (4) and (5) above are in effect, City agrees not to build, erect or construct, nor attempt to build, erect or construct, or have built, erected or constructed, either directly or indirectly, an electric light and power plant and street lighting and distribution systems, or either or any of them, nor issue or attempt to issue the bonds authorized by the election held on April 3, 1936, or any other securities of any sort whatever, for the purpose of erecting or constructing an electric light and power plant and street lighting and distribution systems, or either of them."

This section of the contract is not in violation of Section 26, Article I, of our Constitution, nor of our anti-trust laws. Having the power to sell the instrumentalities, the subject matter of the contract, the City of Yorktown, as an incident of the sale, had the lawful right to agree for a limited time not to engage in a competitive business. 29 Tex.Jur. 769; Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079. The literal language of this section denies appellant's contention that it created a monopoly and an unlawful combine in violation of our anti-trust laws. The City of Yorktown did not contract in this section, nor in any other section of the contract, that it would not grant to another company a franchise to build a second electric system within its corporate limits; by the language of the contract there was no limitation on the city's right to grant additional franchises. The City did not contract away its power to purchase or acquire under eminent domain or foreclosure proceedings appellee's plant, nor any other plant that might be erected on authority of this franchise. The City did not contract to take from appellee all the electric power to be used by it or by its citizens for the ten years of the con-

tract nor for any other period. As directly in point, sustaining our construction of the contract, we make the following quotation from the City of Walla Walla case, supra [172 U.S. 1, 19 S.Ct. 82, 43 L.Ed. 341]:

"The argument of the city is that the council exceeded its powers in authorizing the contract with the water company for a continuous supply of water and the payment of rentals for 25 years, and that such contract was specially obnoxious in its stipulation that the city should not construct water works of its own during the life of the contract. * * * Without expressing an opinion upon the point involved in that case [the City of Brenham case is referred to, but that case is not in point on this issue], we are content to say that an ordinance granting a right to a water company for 25 years to lay and maintain water pipes for the purpose of furnishing the inhabitants of a city with water, does not, in our opinion, create a monopoly, or prevent the granting of a similar franchise to another company. Particularly is this so when taken in connection with a further stipulation that the city shall not erect water works of its own. This provision is not devoid of an implication that it was intended to exclude only competition from itself, and not from other parties whom it might choose to invest with a similar franchise. * * * An agreement of this kind was a natural incident to the main purpose of the contract,—to the power given to the city by its charter to provide a sufficient supply of water. * * * We think a disclaimer of this kind was within the fair intendment of the contract, and that a stipulation to that effect was such a one as the city might lawfully make, as an incident of the principal undertaking."

It follows that the judgment of the lower court sustaining the demurrer to appellant's petition should be sustained.

We pretermit a discussion of appellee's counter proposition that the City of Yorktown, a municipal corporation, was not a person, firm, corporation, or association of persons within the meaning of our anti-trust statutes. Also, we pretermit a discussion of appellant's proposition that, if it be conceded that the City of Yorktown was not within our anti-trust statutes and was not subject to prosecution thereunder, such immunity did not extend to appellee as a conspirator under the anti-trust statutes with the City of Yorktown.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.