

# THE ATTORNEY GENERAL
## OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

April 12, 1988

Honorable Hugh Parmer
Chairman
Intergovernmental Relations
   Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-891

Re:    Whether an emergency
communication district   is
authorized under article
1432e, V.T.C.S., to supply
emergency    communications
service   under    contract
with other jurisdictions
(RQ-1338)

Dear Senator Parmer:

You ask three   questions in   regard to the   authority
and   operation   of   the   Lubbock   Emergency  Communication
District.   We restate those questions as follows:

> 1.   Does the district   have the   authority
> to contract to   provide emergency   communica-
> tions services to other jurisdictions without
> those   jurisdictions   becoming   part   of   the
> district?

> 2.   Does the district   have the   authority
> to impose an   additional fee   on an   incoming
> jurisdiction to cover the costs of   providing
> emergency   communication   services   to   that
> jurisdiction?

> 3.   How and   when does   the membership   of
> the board change   when new jurisdictions   are
> added to the district?

We have been informed by a brief submitted   in response to
your questions   that the   Lubbock Emergency  Communication
District [hereinafter the   district] was   created in   1986
pursuant to article 1432e, V.T.C.S. [hereinafter the act].
Acts 1985, 69th Leg., ch. 288, at 1331.

Section 2 of   the act identifies   the purpose of   the
act as follows:

> It is the purpose of this Act to establish the number 9-1-1 as the primary emergency telephone number for use by certain local governments in this state and to encourage units of local government and combinations of those units of local government to develop and improve emergency communication procedures and facilities in a manner that will make possible the quick response to any person calling the telephone number 9-1-1 seeking police, fire, medical, rescue, and other emergency services. . . .

The district is composed of Lubbock County and all incorporated cities located in Lubbock County. The questions arise because the district has received inquiries from Hale County and the City of Plainview in regard to becoming a part of the district or receiving the services of the district.

Your first question, regarding the authority of the district to contract to provide emergency communication services to a jurisdiction that is not part of the district, is answered in the affirmative. We understand your question to be whether an entity that is authorized to become a part of the district pursuant to the act may, in the alternative, merely contract for 9-1-1 services. The Interlocal Cooperation Act was enacted in 1971 with the purpose of improving "the efficiency and effectiveness of local governments by authorizing the fullest possible range of intergovernmental contracting authority at the local level." V.T.C.S. art. 4413(32c), §1. That act allows local governments to contract for the performance of governmental functions and services. V.T.C.S. art. 4413(32c), §4. Section 3(1) of the act defines "local government" in part as "a county; a home rule city or a city, village, or town organized under the general laws of this state; a special district." Section 3(2) defines "governmental functions and services" as "all or part of any function or service included within the following general areas: police protection and detention services; fire protection . . . public health and welfare."

That act would seem to have anticipated exactly the kind of contract under consideration here; however section 4(b) requires that all parties to a contract for the performance of governmental functions or services must be authorized to perform those functions or services. See Attorney General Opinion Nos. H-28 (1973); H-392 (1974).

The Lubbock Emergency Communication District is authorized to provide 9-1-1 emergency service. <u>See generally</u> V.T.C.S. art. 1432e.

In general, the duty of municipalities to provide for the health, safety, and welfare of their inhabitants and their authority to do so through ordinance and contract is well established in Texas law. <u>See Texas-New Mexico Utilities Co. v. City of Teague</u>, 174 S.W.2d 57 (Tex. Civ. App. - Fort Worth 1943, writ ref'd w.o.m.); <u>Neal v. San Antonio Water Supply</u>, 218 S.W. 35 (Tex. Civ. App. - San Antonio 1919, writ ref'd); <u>Athens Telephone Co. v. City of Athens</u>, 182 S.W.42 (Tex. Civ. App. - Dallas 1915, writ ref'd); Local Gov't Code §§51.001, 51.012, 51.014, 51.032, 51.051, 51.072.

Counties do not have the broad range of authority in the area of health, safety and welfare that cities have. Counties have no powers or duties except those that are expressly granted and defined by statute or constitution. <u>Harrison County v. City of Marshall</u>, 253 S.W.2d 67 (Tex. Civ. App. - Fort Worth 1952, writ ref'd); Attorney General Opinion JM-789 (1987). We find authorization for a county to provide 9-1-1 emergency service only in article 1432g, which authorization is limited to a county that has a population of more than 1.5 million and in which a communication district has not been established under article 1432c, V.T.C.S. Accordingly, we find that the district may contract with a county that comes within the terms of article 1432g and with any city, general law or home rule, that has an ordinance allowing the city to provide 9-1-1 emergency service. Any such contract would need to meet the requirements of both the Interlocal Cooperation Act (article 4413(32c)) and the district's enabling act (article 1432e). Hale County does not, however, fall within this statute because its population is substantially less than 1.5 million. Therefore, Hale County may participate in the district only by joining as a member jurisdiciton pursuant to article 1432e, V.T.C.S.

Your second question concerns the authority of the district to impose on a jurisdiction, which is becoming a part of the district, an additional charge to cover the cost of providing service. Section 27 of the act provides that a public agency in the county in which the district is located or in an adjoining county may become a part of the district on adoption of a resolution by the governing board of the public agency and approval by the district's board. Section 3(2) of the act defines "public agency"

as "any city or county that provides or has authority to provide fire-fighting, law enforcement, ambulance, medical, or other emergency services."

Section 11(c) enumerates charges that are assessable to public agencies that enter the district after its formation. That section expressly authorizes the board to charge the incoming jurisdiction "an additional amount of money to cover the initial cost of providing the service to the incoming jurisdiction." Accordingly, we answer your second question in the affirmative.

Your third question involves the reorganization of the board upon the addition of new jurisdictions. For the purposes of this opinion we will assume that an adjoining county is to be added to the district. As noted above, section 27 of the act clearly permits non-participating jurisdictions to join the district after its initial formation by the joint action of the board of managers and the governing body of the incoming jurisdiction.

Because the city of Lubbock meets the definition of "most populous city" found in section 3(6) of the act, section 6(a) governs the appointment of the members of the board of managers. That section reads in part as follows:

> Sec. 6. (a) If the district has a city meeting the definition of 'most populous city,' the district's governing authority is a board of managers composed of:
>
> (1) one voting member for each county in the district, with the commissioners court of each county appointing its own member;
>
> (2) two voting members appointed by the governing body of the most populous city in the district;
>
> (3) one voting member appointed by the governing body of the second-most populous city in the district;
>
> (4) one voting member appointed to represent the other cities and towns lying wholly or partly within the district, that appointment to be made by the mayor's council established to administer urban development block grant funds if such a

> mayor's council exists and, if a mayor's council does not exist, then by action of the other board members, on the advice and recommendation of the governing bodies of all other cities and towns lying wholly or partly within the district; and
>
> (5) one nonvoting member appointed by the principal service supplier.

While the legislative intent to change the composition of the board upon the addition of new territory is not clear from the language of section 6(a), such an intent is clear from the language found in section 6(b), which governs the composition of the board where there is no "most populous city" within the district. Section 6(b)(1)(B) reads as follows:

> [I]f only one county was in the district as the district was originally created but more than one county is currently in the district, two voting members appointed by the commissioners court of the county in which the district was originally located and one voting member for each other county in the district, with the commissioners court of each of those other counties appointing its own member. . . .

That section clearly indicates that the membership of the board will change with a change in the territory that is included in the district. We find no reason in that regard to distinguish a district that includes a most populous city from one that does not. The legislature intended to create a representative board, albeit remotely representative in the case of other cities and towns in the district (see section 6(a)(4) above).

The legislature has given no direction in regard to the change in the membership of the board upon the addition of new territory. We can find no reason to unseat the member currently representing the second most populous city upon the addition of another city. Furthermore, there is public policy to be served by allowing that member to serve the remainder of his term. The statute does not, however, contemplate the immediate addition of an additional member to the board. Consequently, we conclude that the member currently appointed by the second most populous city should serve the remainder of his term,

and the member appointed by the newly added second most populous city should not begin to serve his term until the completion of the term of that member whom he will replace.

## S U M M A R Y

The Lubbock Emergency Communication District has the authority under the Interlocal Cooperation Act to contract to provide emergency communication services to jurisdictions that are not part of the district. The district has the authority to impose a fee on an incoming jurisdiction to cover the cost of providing emergency communication services to that jurisdiction. The membership of the board will not change until the expiration of the term of the member who will vacate the board.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General